AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
09/14/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: DM   DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
SEP 14 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: Col   DEPUTY

United States of America

v.

EDUARDO MENA,

Defendant(s)

Case No. 2:21-mj-04256

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 16, 2021, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1708 | Possession of Stolen Mail |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Zera Poirier
Complainant's signature

Zera Poirier, U.S. Postal Inspector
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 9/14/2021

Judge's signature

City and state: Los Angeles, California

Hon. Jacqueline Chooljian, U.S. Magistrate Judge
Printed name and title

AUSA: Maria Elena Stiteler (x6148)

I, Zera J. Poirier, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Eduardo Mena ("MENA") for a violation of Title 18, United States Code, Section 1708 (Possession of Stolen Mail).

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF AGENT

3. I am a U.S. Postal Inspector ("Inspector") with the United States Postal Inspection Service ("USPIS") and have been so employed since July 2014. I am currently assigned to the Los Angeles Division, Coastal Mail Theft and Violent Crimes Team, which investigates crimes against the United States Postal Service ("USPS") and crimes related to the misuse and attack of the mail system, including theft of United States mail, fraud, and related activity in connection with access devices (including credit and debit cards), identity theft, and

counterfeiting of postal keys (referred to as "arrow keys") and locks.  Additionally, the Coastal Mail Theft and Violent Crimes Team investigates violent crimes that occur against postal employees, including but not limited to, assaults and armed robberies.  In addition, I have received both formal and informal training from the USPIS and other institutions regarding computer-related investigations and computer technology.

    4.    Prior to becoming a Postal Inspector, I worked for the Federal Judicial Courts Northern District of Texas, Amarillo Division, as a Federal Probation Officer for approximately two and a half years.  Before my employment with Federal Probation, I was a police officer in the Denver Metro Area in Colorado for approximately three years.  My training and experience includes the investigation of numerous major criminal cases including, but not limited to, crimes related to the attack and misuse of the United States mail system, including theft of mail, access device fraud, identity theft, assaults, robberies, and burglaries.

    5.    I have completed a 14-week federal law enforcement training course, which included instructions in criminal investigations of mail theft, mail fraud, identity theft, internet investigations, and prohibited mailings (such as narcotics).  I have attended training in the proper identification, preservation, and collection of digital devices and storage media.  I have also attended training in the proper identification, preservation, and analysis of social media

records. I am currently assigned full-time as a Postal Inspector with the Los Angeles Division Mail Theft and External Crimes Team. As a Postal Inspector assigned to that team, I am responsible for the investigation of the unlawful use of the U.S. Mail for criminal activity, including stolen U.S. Mail, identify theft, bank, check, and credit card fraud.

### III. SUMMARY OF PROBABLE CAUSE

6.  On August 16, 2021, Torrance Police Department ("TPD") officers were dispatched to a convenience store on Emerald Street, Torrance, California, 90503, for a welfare check. Dispatch advised the responding TPD officers that the reporting party, an employee of the convenience store, said there was a male, later identified as MENA, passed out in the parking lot inside a blue, two-door BMW bearing California license plate 8KFA150 ("the BMW").

7.  Upon arrival, the TPD officers observed the BMW parked between two spaces in the business parking lot with the vehicle's front two tires over the cement parking barrier. The vehicle was still on and the TPD officers shined a flashlight through the driver's side window and observed MENA with his head down, shoulders slumped over and his hands in his lap. MENA was unresponsive. The TPD officers woke MENA up by tapping on the window and ordered MENA out of the vehicle, where they observed a knife in MENA's front left jeans pocket and heard a rattle that sounded like pills in a container in MENA's pocket. MENA's speech was slurred and he appeared to be under the influence of an unknown substance.

8.  TPD officers placed MENA into handcuffs, searched his person, and searched the BMW. The searches revealed thousands of pieces of U.S. Mail, including over three hundred "Vote-by-Mail ballots," a loaded firearm, multiple pills, a white crystal-like substance, multiple checks in other names, multiple California driver's licenses in other names, multiple access devices in other names, and twelve digital devices.

### IV. STATEMENT OF PROBABLE CAUSE

9.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A. Welfare Check**

10. I understand the following from my review of the TPD arrest report, dispatch records, and body warn camera footage activated by TPD officers during the incident:

   a.  On August 16, 2021, TPD Officers A. Dahl and R. Schmitz were dispatched to a convenience store on Emerald Street, Torrance, CA 90503, to conduct a welfare check. Dispatch advised the responding TPD officers that the reporting party, an employee of the convenience store, had said there was a male, later identified as MENA, passed out in the parking lot inside the BMW.

   b.  The reporting party stated that he had knocked on the BMW's window in an attempt to wake the driver up. The reporting party further reported that the male in the BMW had looked at him and then went back to sleep. The reporting party felt the male in the BMW was under the influence.

c. Upon arrival, the TPD officers saw the BMW parked between two spaces in the business parking lot with the vehicle's front two tires over the cement parking barrier. The BMW was still on and the TPD officers shined a flashlight through the driver's side window and observed MENA with his head down, shoulders slumped over, and his hands in his lap. MENA appeared unresponsive. The TPD officers observed an unidentifiable green bindle in his lap near his hands. The TPD officers knocked on the driver's side window in an attempt to wake MENA up. In response, MENA lifted his head and appeared to the TPD officers to be confused and disoriented. The TPD officers asked MENA to roll down his window and turn the vehicle off, to which he complied. The TPD officers reported MENA appeared very incoherent and his speech appeared to be slurred.

d. The TPD officers asked MENA to open the door of the BMW and step out of the vehicle. MENA appeared to be unable to open his own door, so a TPD officer reached inside the BMW, opened the door, and had MENA step out of the vehicle. As MENA stepped out, the TPD officers observed the metal clip to what appeared to be a knife in his front left jeans pocket. Further, the TPD officers heard the rattling of what sounded like pills in a container coming from MENA's pocket.

**B.    TPD Officers Arrest MENA and Search the BMW**

11. I understand the following from my review of the TPD arrest report, supplemental narcotics report, dispatch records, and body worn camera footage activated by TPD officers during the incident:

    a. The TPD officers searched MENA's person, and found a large switchblade knife in MENA's front left jeans pocket. TPD Officer A. Dahl also found a small cylindrical container, similar to containers for storing narcotics, in MENA's front left jeans pocket. The small cylindrical container contained multiple pills. TPD Officer A. Dahl located and removed MENA's wallet from his rear left jeans pocket. The TPD officer then handcuffed MENA pending further investigation.

    b. While looking through MENA's wallet to obtain his identification, TPD Officer A. Dahl found three California driver's licenses in the names of other people, with the initials J.V., P.W., and A.C. The TPD officer also located MENA's California driver's license in his wallet.

    c. The cylindrical container in MENA's front left jeans pocket contained: approximately 5 rectangular blue pills with B-707 pressed into them, approximately 4 rectangular green pills with S-903 pressed into them, approximately 8.5 rectangular yellow pills with R-039 pressed into them, and approximately 8 round blue pills with "M" pressed in on one side and the number "30" pressed in on the other side. The TPD officers recognized that the pills appeared to resemble Xanax and Oxycodone pills. Due to MENA's behavior, the TPD officers reportedly were concerned with MENA possibly suffering an overdose and questioned MENA on the amount of narcotics MENA had consumed. MENA admitted to the TPD officers that the pills were Xanax and stated that he took approximately two full bars of Xanax approximately two hours prior.

    d. The TPD officers then searched the BMW. During the search, the TPD officers found:

      i. On the driver's seat, two iPhones;

      ii. On the driver's side floorboard, one Android cellular phone;

      iii. In the center console, a loaded black and green handgun with a serial number that appeared to be scratched off and with a 17-round magazine seated in the firearm; a baggie containing a white crystalline substance resembling methamphetamine; a pair of black gloves; and a scale commonly used to weigh narcotics;

      iv. In the back seat of the vehicle, thousands of miscellaneous pieces of mail including mail-in ballots bearing various names and addresses from the 4000 block of 161st and 162nd streets in the City of Lawndale, California; a black backpack containing a cylindrical long glass pipe with a bulbous burnt end; a blue glasses case with six removable flash drives and two removable SD drives; a kit with various pens and razors that can be used to alter or forge documents such as checks; a small black Nike box containing multiple signed checks, partially signed checks, and "washed" checks with names that appeared to be removed, all bearing various names and addresses; a California ID card bearing a name with initials D.J.; and hundreds of miscellaneous pieces of mail bearing various names and addresses from the 600 block in the City of Compton; and

      v. In the trunk of the BMW, a black backpack containing a black HP computer printer with charging cord; a

Lenovo Legion 7 black laptop; a glass cylindrical container containing a white, crystalline substance resembling methamphetamine; approximately 29 green rectangular pills with S-903 pressed into them; approximately 65 yellow rectangular pills with R-039 pressed into them; approximately 2 pieces of a rectangular white pill; and a black "Husky" backpack with hundreds of miscellaneous pieces of mail bearing various names and addresses in the City of Compton.

### C. Mail Stolen from U.S. Postal Vehicle

12. On August 16, 2021, Inspector Gerardo Ramirez obtained Ring Video Doorbell surveillance video of a Postal vehicle break-in that took place on or about August 14, 2021, in the 600 block at South Aprilia Ave., Compton, California, 90220.

13. The video has a date/timestamp of August 14, 2021, at 14:02:42. The video shows a parked Postal vehicle with the rear door open and a male suspect standing behind the Postal vehicle. The suspect appears to be approximately 5'10" to 6' tall, with a thin build and wearing what appears to be a clinical face mask. As shown on the video, the suspect reached into the rear cargo area of the Postal vehicle and appeared to remove a tray and a tub of mail, and then placed the items into the rear passenger compartment of a blue BMW with what appeared to be a black convertible top and silver or chrome wheels that was double-parked next to the Postal vehicle. At 14:02:52, the video freezes. When it resumes at 14:03:00, the rear door of the Postal vehicle was closed, and the suspect had entered the

driver side of the BMW. The BMW then drove away on South Aprilia Avenue. The video ended at 14:03:22.

14. On August 24, 2021, I reviewed the video from the Ring Doorbell described in the above paragraph and observed that the vehicle in the video appeared to match the vehicle in which MENA was sitting when he was contacted by the Torrance Police Department.

15. First class mail located in MENA's vehicle at the time of the arrest was consistent in terms of address and postmark with mail that was stolen from the Postal vehicle.

**D.   Criminal History**

15. On August 31, 2021, I reviewed conviction documents for MENA and learned that MENA has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a.   On or about July 30, 2014, a violation of Assault with a Deadly Weapon with Force, Possible Great Bodily Injury, in the Superior Court for the State of California, County of Los Angeles, Case Number SA08803402;

    b.   On or about September 22, 2014, a violation of Possessing a Controlled Substance for Sale, in the Superior Court for the State of California, County of Los Angeles, Case Number YA0910930; and

    c.   On or about November 30, 2015, a violation of Using Another's Personal Identifying Information Without Consent, in the Superior Court for the State of California, County of Los Angeles, Case Number NA10301101.

### E. Drug Test

16. On August 24, 2021, TPD Detective K. Tanaka conducted TruNarc Presumptive Tests on the white crystal-like substances seized from MENA, which showed:

    a. The white crystal-like substance in the plastic baggie tested positive for methamphetamine and weighed approximately 20.36 grams (weighed without packaging); and

    b. The white crystal-like substance in the glass jar tested positive for methamphetamine and weighed approximately 1.15 grams (weighed without packaging).

17. The pills were not tested but had physical markings consistent with alprazolam and oxycodone.

### F. Interstate Nexus

18. On August 27, 2021, an ATF Interstate Nexus Expert examined the ammunition loaded in the firearm found in MENA's vehicle and confirmed that the ammunition was manufactured outside of the State of California. Because the ammunition was found in California, I believe that it has traveled in and affected interstate commerce.

### G. Search Warrant

19. On September 2, 2021, the Honorable Pedro V. Castillo issued a search warrant to search twelve digital devices in MENA's possession when he was arrested for violations of Title 21, United States Code, Sections 841 (Possession with Intent to Distribute a Controlled Substance) and 846 (Conspiracy to Distribute Controlled Substances) and Title 18, United States Code, Sections 371 (Conspiracy), 922(g)(1) (Firearm and

Ammunition Possessed by Convicted Felon), 1028 (Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information), 1028A (Aggravated Identity Theft), 1029 (Access Device Fraud), 1344 (Bank Fraud), and 1708 (Mail Theft and Possession of Stolen Mail) in case number 2:21-mj-04104. The searches authorized by the warrant are ongoing.

## V. CONCLUSION

20. For all of the reasons described above, there is probable cause to believe that MENA has committed a violation of Title 18, United States Code, Section 1708 (Possession of Stolen Mail).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this /4th day of
September, 2021.

_____
HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE